Thank you, Your Honor. Good afternoon. My name is Tom Davis and I'm representing the appellant, plaintiff in this case, Living Ecology, and we're seeking the reversal of the summary judgment motion granted in favor of the respondent, defendant, Bosch Packaging. This is a case seeking refund for defective equipment that we believe should be resolved on the merits rather than on a somewhat tortured series of decisions that lead to an unknown and really undisclosed court and statute of limitations that the court found to be controlling. The justice system as a whole is intended to mostly resolve things on the merits unless there's a good reason not to. I don't think in this case there was a good reason. I think the decisions that were made to lead to the summary judgment decision were all either issues of fact or were incorporated. There had to be four decisions that were made by this court or by the district court to find that the shortened statute of limitations apply and to find that it warranted summary judgment against the appellant. The first decision was that the parties had agreed to the terms and conditions which were never attached to the pro forma purchase order, which were never expressly referenced in any of the documents, and which were never provided to the Living Ecology. Council, if I could interrupt for just a minute. Whose burden of inquiry is it, I guess, because I'm looking at the invoice and I and your argument, and I appreciate it, that it doesn't refer directly to the 2014 terms and conditions, but it plainly does refer to some documents. And so why wasn't your client, why wasn't the burden really on your client to say, okay, you know, we're looking at this invoice, but we see there's some additional documents referenced, where are those? The main point on that is that for normal business transactions, certainly yes, but in this case, we're talking about an aberrational shortening of the statute of limitations, which in Nevada would be four years, and which even under Wisconsin law would be six years. So certainly there is some obligation to make an inquiry, but the language referring to the terms and conditions is not even precise, and there's an obligation for it to be an express referral. In page nine of our reply brief, we go through how the actual document is titled and how it differs from the three different ways it is titled in the other reference. And in fact, it uses terms like following and included, which may cause a normal business person to think that it means the other language in the four pages of the purchase order, as opposed to an entirely separate document of a multitude of pages. Now, while there is some duty to inquire about the basic terms and the analysis of the terms and conditions, I don't think that there is a need to do that in this case, where it's a complete surprise. It references a state that has no connection to the transaction, Wisconsin. This was a purchase of equipment from Germany to Las Vegas, Nevada, Henderson, Nevada. And this is something that should have been highlighted or referenced or somehow brought out by the seller. If it had been something in normal course, certainly I think that argument is much more well-founded. How do you define normal course? Are you suggesting that your client did not have a duty to request clarification for some reason, or that it's an issue of fact regarding whether his failure to ask for clarification prevents him from bringing this home? I think mostly the second, that it is an issue of fact. But as to the first, this is a multi-page document of terms and conditions that is not clearly set out as a separate document, even if it had been additional. The terms and conditions are set forth in the pro forma, in the purchase order. So it's not reasonable to expect that some additional term would be done unless there's some highlight in the purchase order, or unless the document is provided. And even then, quite the kind of thing that should be highlighted or brought to the attention of the purchaser. That's just to get by the first avenue of it, whether there was a meeting of the minds. I don't think it's reasonable to find that there's a meeting of the minds when one party hasn't even seen the portion that they're supposedly meeting the minds on. Counsel, I mean, so I understand your argument that the reference to terms and conditions, that we think that there was a clear and express, or just imagine counterfactually if you want, a clear and express reference to the terms and conditions. If that were the case, do you think it would matter that you didn't, whether you actually received them or not? How would we, what do you think the legal standard would be in a case where there was a clear reference to some other document, but, and you signed the contract for that other document? If there was a clear and express reference to another document, I agree we should look at that document and be bound by the terms. But, if that document is of the volume that it has numerous got you type of provisions in it, I think there's a duty on the part of the entity that created the document to highlight those. This is a pretty serious distinction when even under Wisconsin law, it would be six years and Nevada law four, and all of a sudden it's one year. But again, that's just the first, the first decision that had to be made to find that summary judgment was appropriate. And I, and I think the earlier question touches on it, but even that is an issue of fact. And I think two of the four decisions that the district court made were actually issues of fact that were inappropriate for a legal finding of summary judgment. The second issue that they had to find was that the document was available and it was authenticated. And we go through in our brief how one, no one's shown how that document was available and how we could have achieved it. I guess that goes to the last question about, could we have asked for it? And that's certainly an arguable question, but there's no showing that they made it available to us. There's no showing anywhere in the record that it was authenticated for purposes of summary judgment. I'm sorry, let me just ask you to back up for a moment. Um, why, why is it a, is there really any fact dispute as to whether you could have asked for it? I mean, I, I didn't see that there was any evidence that they wouldn't have given it to you if, even if, even if we take, even if we accept your position that it's disputed whether you got it right. So we'll assume you didn't get it. Um, why couldn't you have asked? There, there was no, uh, impediment for us asking for the document. But again, the way it's written, I don't think there's a consensus or a clear implication that there is a separate large document that applies. If you'll look at the three references, one reply applies to a warranty. The other one talks about following term following and included terms and conditions. Does that mean it's a separate document or does it apply to the rest of the, of the, uh, purchase order as included or, uh, or following? And then the last one, uh, the last one talks about attached and there was nothing attached. So, and that also references following. I think it's reasonable for a business person to assume that what's in there is included and there were exceptions in the purchase order. There were other provisions that, that set the, uh, warranty period at a certain place in time and that address the other terms and conditions of the deal. There was no mention that, oh, by the way, there's an obscured Wisconsin provision that has no connection to this case and it shortens your ability to sue, uh, by either five years or three years. So anyway, when you go to the second question about the authentication, that was never done too. The third question that had to be decided was that the, uh, that the, uh, attachment would apply to everything and not just to warranty provisions. And the only reference to terms and conditions that references, uh, anything specific talks about warranty provisions. Um, the other word, there's a, there's a sentence after that, though, which you alluded to a moment ago that says, um, this order confirmation is subject to the attached documents and our, and then using initial capital letters are general terms and conditions of sale. And that's, that's not tied to the warranty. That's just a general reference. Well, and there, and there are, as far as I know, there are multiple documents on general terms of sale. This is a specific one. And again, we referenced it in the brief that's dated, uh, they're arguing at least that it's one dated January one of 2014, which implies that there might be other ones and other dates and they might have refined those from time to time. I think if you're going to hold someone to that kind of a harsh standard, you have to specifically, and we argue in our reply brief, expressly identify what that document is and that there's no reference in there that expressly documents it that way. Um, if we go beyond that as to the warranty, the last question, even if all of that is decided in favor of the respondent, you still have to find under the Wisconsin statute, apology is a merchant to shorten it to one year. Otherwise it's six years statute of limitations, which is the standard in Wisconsin. Um, that I think is clearly a question of fact. And quite honestly, if it's to be determined legally, I don't see how living ecology can be a merchant in the purchase of a set of machinery. That's a one time transaction. And that's the only time that, that it was purchased by this company from the respondent. Merchants are defined in the Wisconsin statutes 402.104 as clearly and regularly, excuse me, as regularly dealing in the goods for which they are merchants. Uh, there's no evidence that we regularly, uh, engaged in purchasing machine lines. Um, and it references goods. Is a line of machinery even qualified as goods? But the, the other part of that someone who has knowledge or skill peculiar to the practices or goods involved in the transaction of this. This wasn't a consumer product. This is a sophisticated piece of industrial machinery. Um, so I did that fact relevant to the analysis of your your expertise in the use of this good. I think it is. But we relied upon the engineers and the people from Bosch to set it up and show us how to do it. They sent two engineers from Germany to train us and get it working. And unfortunately, it never did get working, which is the result, which is what resulted in this lawsuit. Um, if all four of those to say if we're found to be a merchant and again, I don't see how that's not an issue of fact. But, uh, to the extent there is law on that, the aspect of both goods and of regularly using an expertise. We had no expertise in that type of equipment. They say we had some employee that gave us that expertise. But that's not a common sense evaluation of being a merchant and knowing goods involved. I think, uh, at a minimum, these air to at least the first one meeting of the minds of the last West merchant are factual issues. I think they should be heard. This case should be heard on the merits, not on a tortured series of decisions that seem to find a way to deprive the appellate of its stay in court. And I'd like to reserve the rest of my time for rebuttal. Quick question before you do is what is the amount of damages you're asking for in the case? Uh, it's between the base amount is between 500,000 and a million. Okay, thanks. Thank you. Mr Walters. Thank you, Your Honor. Good afternoon. May it please the court. Uh, my name is Brian Walters. I'm appearing for respondent Bosh packaging technology. Your Honor's. There's two primary reasons why this court should affirm that this report order granting Bosch's motion for summary. First, the district court correctly relied on the uncontroverted facts before find that the subject terms and conditions were incorporated into the pro forma invoice under Nevada law and therefore became part of the party's The second argument is that L. E. I. Raises several arguments that you just heard that were not raised in the district court below and therefore should not be considered by this court on appeal. Notably, L. E. I. Did not raise the issue of authenticity of the terms and conditions below L. E. I. Also, why don't we just why don't we just go to the invoice which I'm looking at and explain how it is that the invoice which has this varying language could be read to incorporate a specific document known as the 2014 condition of your client. Yes, Your Honor. So I would like to focus the court's attention on the third reference, and it's important to note in that regard that there are no warranty terms in the pro forma invoice and for the reader to find the terms and conditions. They're not set forth in the pro forma invoice. The pro forma invoice specifically requires the reader to rep to quote reference are attached terms and conditions for period and conditions of warranty and unquote and that the only difference to our terms and conditions refers to the warranty period for this used laboratory line, which is six months at one production ship. That's in the record at 57. So, Your Honors, it's Bosch's position that that last reference in the record at 57 expressly and unambiguously put L. E. I. On notice of an external document. And again, there was no way for L. E. I. To know what its warranty terms were without referring to the terms and conditions. But what's to what's to stop your client from coming in and holding up a completely different document and saying, Well, this this is our terms and conditions. I mean, you could you could point to any document and call it your terms and conditions, and we would have no way to know if, in fact, that's the terms and conditions that are being referenced here in the invoice. That that's something that could hypothetically happen, Your Honor. But in this case, there's no objection below or there is no, uh, no assertion or any argument that this was not a genuine Bosch document or that it was anyway created just for this case. And if the case did proceed the trial or if there was an objection asserted when we filed our motion for summary judgment, we easily could have obtained a declaration from somebody at Bosch authenticating the document. But again, it's important to point out that there was no objection to authentication in the district court below. And also, um, even if this court does look at the authentication issue, the document was arguably authenticated by at least one reference in the record where there's an excerpt of deposition testimony from a Bosch employee that testified basically to the extent that, uh, the terms and conditions are the terms and conditions were when they didn't get them. But it also doesn't seem too much to ask you if you want to be sure that, um, these are actually incorporated in the contract, um, to be sure that you attach them when you send it. And, you know, here we have a situation where there's some disputed whether you actually did that. So, um, you know, I guess my question is, you know, um, why, you know, why shouldn't we say that, you know, if you want to be sure that these are really, uh, found to be available to the, uh, to your counterparty, um, that you either attach them to the document or put them on the website somewhere that everybody can see them or something like that. I know. Why didn't you do that here? Well, that's a good question, Your Honor. And in fairness, if we had the benefit of hindsight, I think Bosch definitely would have done that. But in sophisticated business transactions, sometimes there's oversights. And I think it's important to point out that the fact that the terms and conditions were not physically attached, um, is not a requirement under Nevada law. As long as there's a reference in the contract to, um, the document doesn't have to be attached. And that's in the Lincoln case that we cited. Um, so the fact that it wasn't attached does not change the district court's, um, finding, or it doesn't, uh, otherwise compromise the accuracy of the district court's finding. Your Honors, the district court cited to and relied on the Nevada Supreme Court's decision in Lincoln Welding, uh, 1982 Supreme Court of Nevada case and specified that its incorporation analysis was under Nevada law. And that's an argument that the, uh, the appellant are advocating for this court to apply a harsher standard that comes from a California case and argument below. But Nevada already has a standard under the Lincoln case. And the rule in Lincoln states, quote, writings which are made part of the contract by annexation or reference will be so construed. That's the rule stated in Lincoln. As recognized and paraphrased by the district court, the rule states where reference in a contract to the terms of a collateral document indicates an intention to incorporate those terms generally, such reference can become part of the contract. Moreover, if the terms of a collateral document are made part of the contract, those terms are not included in the very contract itself. Again, that's the district court's interpretation of the Lincoln case. And it's Bosh's position that the district court got it right in that regard. But what about here where the reference to this potentially external document is provided in varying language? There's not a consistent, there's no reference to a specific document that is called the 2014 terms and conditions or the 2014 Bosh terms and conditions. Instead, there are three references to potentially some other document, but those references vary in the language that's being used. So given that, why is there not at least a dispute of fact here as to whether these terms and conditions were part of this invoice? Yes, Your Honor. That's a good question. If you look at the record at 133, which is the terms and conditions, and it's a one page document, contrary to what you heard from counsel. I'm looking at it. Okay. The top of the document has three lines. The first line is Bosh Technology, Inc., the name of the company. The second line, terms and conditions. What the appellant is doing is bunching those lines all together and arguing that that specific group of lines makes up the title to the document. But that's not what the district court found. The district court found that the document was both terms and conditions, and it used the reference 2014 terms and conditions in its order. And for the record, there's no evidence of any other terms and conditions in the record. So, I mean, you're not arguing that, but what if there were some document called the February 1st, 2014 terms and conditions? Why wouldn't you be able to come in and hold that up and say that that's the one that's the terms and conditions? If that was the case, Your Honor, we would, but that's not the case here. The record reflects that the only terms and conditions are the terms and conditions that were presented in this case, and those terms and conditions are the ones that are referred to in the final reference in the pro forma invoice, which requires the reader to refer to the terms and conditions to find the warranty terms. And that's an important connection that the district court made. The district court, in fact, said that the reference, the last reference in the pro forma invoice, was the fact that there's collateral document, and the court found that that language and that reference was clear and unambiguous. And again, isn't it made a little bit ambiguous, at least by the following sentence, which refers to general terms? Well, using capital letters as if that phrase general terms and conditions of sale were the title of a document, and that is not the title of the document that you just referred us to on 133. Yes, Your Honor. And again, it's our position that the title of the document is terms and conditions, and that L. E. I. Is overly complicating the title in an effort to try to make the connection between the pro forma invoice and the terms and conditions less clear. But again, going back to that third reference in the pro forma invoice, it's clear that that reference requires the reader to refer to attached quote attached capital T terms, capital C conditions. And there's a connection between those documents, which the district court clearly picked up on. We believe that this report got it right in that regard. Your Honor, I'd like to address a couple points raised by appellant before I close. Counsel for appellant indicated that there were no expressed references in the pro forma invoice. But if you look at the record of 57 again, referring to that last reference, that is clearly an expressed reference, the terms and conditions, and it directs the reader to the separate set of terms and conditions for the warranty provisions. It's also important to point out that the parties in this case of merchants, the sophisticated business entities that should be charged with a higher obligation to inquire as to whether additional documents exist if they're referred to in the controlling contract. In this case, the record is undisputed that the pro forma invoice is the party's agreement, and LEI signified its assent to the pro forma invoice and all of the terms contained within the pro forma invoice by issuing a purchase order that says, quote, per pro forma invoice, unquote. That's in the record at 58. Again, counsel for appellant used the term complete surprise to reference the existence of these terms and conditions. But again, I don't want to beat a dead horse here, but we have to, again, go back to that third reference in the pro forma invoice. It references attached terms and conditions, which had to be read for the warranty details. Right, but I mean, doesn't your friend on the other side have a point here that when a Las Vegas company is doing business with a German seller of a piece of equipment, they might be, or learn they agreed to a one year Wisconsin statute of limitations? Well, for that issue, Your Honor, I don't think the location of the parties necessarily is important, because the record reflects that the parties were in for. So the fact that we're dealing with a German company doesn't affect the fact that they knew what the terms of the contract were, and they were put on notice of the terms and the external terms and conditions by that last reference in the pro forma invoice. Did any of the contract negotiations take place in Wisconsin? I do not believe so, unless they were done electronically through email communications. And to the extent that Bosch Packaging's corporate headquarters is located in Wisconsin, that would have been the case. Your Honor, Your Honors, in closing, the district court correctly considered the facts before it under Nevada law to find that the terms and conditions were in the pro forma invoice. The pro forma invoice includes an express reference to terms, attached terms and conditions. The pro forma invoice requires the reader to refer to the terms and conditions for period and conditions of warranty. The 2014 terms and conditions are the only terms and conditions in the record. LEI did not argue in the district court that references to terms and conditions were vague or ambiguous, and LEI assented to all terms by issuing a purchase order to further pro forma invoice. And this was a transaction between two sophisticated merchants. Bosch respectfully requests that the court affirm the district court's order granting his motion. Thank you, Your Honor. Counsel? Mr. Davis. Thank you, Your Honor. I just would like to address a few of the points raised in the opposition argument. First, in terms of the possibility of other terms and conditions, they're arguing factual issues, whether there might be others and whether there might be some that were predecessors to this one, or even a new one that was created afterwards. And that, again, goes to whether there is a meeting of the minds on this specific document. Second, they make the assumption that we're a merchant. And the fact that you're a sophisticated business person does not make you a merchant in the goods that are being purchased. And that, I think, again, is a significant issue of fact. You think of merchants in a common sense, and it's retailers and wholesalers that regularly deal with each other in terms of buying and selling product. This is a one-time transaction, and it's not a regular dealing. And it is machinery that my client really had no knowledge of until being trained on it by the Bosch engineers. In addition, they argue that it's not necessary to highlight or emphasize the fact that they're applying Wisconsin law to this, which we would, even if, quite honestly, if we asked for the document or it was attached and we had it, I don't think anyone would make that assumption without it being Wisconsin law. If you just look at it normally, you'd say, well, I have a six-year statute of limitations if you had an attorney look at it. The merchant aspect of it is the only thing that arbitrarily shortens it to one year. And I think under either Nevada or under Wisconsin law, the longer statute of limitations would apply to this transaction, not to all transactions. In closing, this is a case that can and should be heard on the merits. We should be looking for a way to make these cases on the merits, not a tortured series of decisions that find a way out of a case. And I believe the summary judgment decision should be overturned and the case should be remanded to be sent for trial. Thank you. Thank you, counsel. Thank both counsel for their very helpful arguments, and the case just argued is submitted. And that concludes our calendar for today. Thank you.
judges: Bastian, Miller, Bress